Were you pleased to have sitting with us this morning as a visiting judge, the Honorable Beth Freeman of the Northern District of California? Thank you for sitting with us, Judge Freeman, and welcome. Thank you. We have four cases on the calendar this morning, two from the PTAB, one from the Claims Court, one from the District Court, two from the District Court, and one from the Claims Court. That and one of the PTAB cases are being submitted on the briefs and not being argued. So our first case is Edward Neister v. Eden Park Illumination et al., 2024, 1374. Ms. Parsons. Thank you, Your Honor. Abby Parsons from the Law Firm of Arnold and Porter on behalf of Counsel for Appellant Mr. Ed Neister. May it please the Court, this panel must reverse the Board's final written decision of obviousness because there is not a shred of evidence in the record showing the use of 222 nanometer light on skin. What there is is the claims recite specifically 222 and 282, and both are in the references, and one of the references describes use with skin. So why, and this isn't an anticipation case, it's obviousness, so why isn't it fairly simple? It's not fairly simple, Judge Lori, because this is a very unpredictable art. And let's look at the specific combination that Petitioner set forth. The first reference, the Eckert reference, you're right, it talks about the use of UV on skin. It only discloses, it has a very broad statement in paragraph 31 that says, any light capable of disinfection can be used in this invention, any light. But if this reference taught the use of 222 or 282 nanometer on skin, this would be a 102 case. Petitioners knew that it didn't support that teaching, and we have to look to Sosnin for the use of 222 or 282 wavelengths. But what Sosnin is missing is the use of skin of any kind. But that doesn't matter. This is not, as you say, a 102 case. This is a 103 case, and so you combine the references, one which teaches the use of light on skin, and one which uses the different range, and the board found a skilled artisan would combine those to find this range can be used on skin. You don't have to find skin in the second reference that has the range. Again, that would be 102. So I don't understand what your argument is in saying nobody shows this range on skin. They don't have to in a single reference for an obviousness case. Are you attacking motivation to combine these two? Yes, we're attacking motivation to combine, but let me first talk about the Prima Fascia case that is not disclosed by even the combination of Eckerd and Sosnin, because under this court's Raytheon decision, which we described in the blue brief at page 27, that the combination must enable the entire invention. So we had some debate in the briefs about whether the rule of 112 applies for obviousness. I'll agree that Ms. Craning had the better argument that a reference itself doesn't have to be self-enabling. So Eckert, we know, doesn't teach 222 or 282 on skin. So we have to look at what Sosnin teaches. And we know from this court's precedent that for obviousness, we're not just looking at individual disclosures. You have to look at the reference for all that it teaches. That's this court's Arctic Cat decision in Raytheon. Is Arctic Cat really something you can still rely on? I'm not sure. I'm not sure I understand your question. Well, I think in the opposition brief that it was argued that this court has walked away from the Arctic Cat factors and uses a different standard. Understood, Your Honor. So applied materials and the general principle that both parties recognize is that for obviousness, you have to look at the entire reference, what a person of skill would have understood from that reference. We start from the principle in Eckert that in Paragraph 5, Eckert himself says, common knowledge says you don't use UV light on skin. That's the premise from which Eckert comes from. It sounds like a teaching away argument. Well, the board made a specific finding discrediting an argument of teaching away. We're not challenging that here. We understood those findings are reviewed for substantial evidence. The finding of the board that lacks substantial evidence is on page 28 of the final written decision where the board says that Sosnin, right in the middle of the first full paragraph, Sosnin suggests using eczema lamps to selectively kill bacteria without damaging skin, and it cites to Figures 8 and 9 of Sosnin. So if we look at what Figures 8 and 9 of Sosnin are, those are two tests, one of which is using 222 nanometer in E. coli, and another is 282 nanometer light also in E. coli. If you look at those, E. coli is not skin. That is clear. Sosnin then uses that data and tries to compare it to two other tests that come from different media using two other wavelengths of 206 nanometers and 282 nanometers to make a comparison. But it seems like you're looking for Sosnin to anticipate, and you're not combining Eckhart and Sosnin and drawing the reasonable combination. I appreciate the question. We have to look at what the person of skill in the art would have looked at Sosnin for that very purpose, and what would they have thought. Sosnin itself says that a Cho cell, that's a Chinese hamster ovary cell, that was the only cell that was being tested other than E. coli in that study. So a Chinese hamster ovary cell, even Sosnin characterizes that as a fibroblast. Petitioner's expert, Mr. Lawal, the only evidence that he says that Sosnin supports skin from a person of ordinary skill in the art, he says a Cho cell is a proxy for a mammalian cell. That sleight of hand is important. A mammalian cell, there are more than 200 different kinds of mammalian cells in a human. Skin is one of those 200 kinds. So you're again arguing that the Apelles expert was incredible, but that's not what we're looking at here. I actually am not arguing. Well, you did argue it in your brief. I did, I did, and I agree that that is not the substantial evidence test, Your Honor. What the finding of the board that lacks substantial evidence is the expert doesn't say that Sosnin teaches skin. Sosnin doesn't have to teach skin. The other one teaches light to disinfect skin. Sosnin just teaches a range for disinfectant. It's the combination of the two that show skin and range. And so whether Sosnin teaches skin or not is irrelevant. If you're arguing that no skilled artisan would look to Sosnin for the range, then that's a different argument. That's a motivation to combine argument. It's not a disclosure argument. I appreciate that, and there is a motivation to combine argument based on Eckert's range. The board did get it wrong in saying there was a generic disclosure in Eckert of a range of wavelengths that were acceptable. In Eckert, paragraph 70, Eckert talks about the use of UV transmitted band-aids. And in that paragraph, it says a xenon flash bulb showing a range of between 220 and 310 nanometers could penetrate a certain type of polyethylene band-aid by 80%. That is a very specific disclosure about a xenon bulb and its penetration of a band-aid. From that one mention of those numbers, 220 to 310, the board grabs that as a general disclosure of a range of acceptable wavelengths that could be combined. A person of skill would not have read that teaching. Eckert does not offer that as a general teaching that those wavelengths are acceptable. But didn't the board reject that argument saying that your client had argued this too narrowly on Eckert? The board did reject the argument that Eckert taught only two embodiments. And below at the P tab, we had argued that only two embodiments were enabled by Eckert. They really focused on what was available at the time of the patent application, which was back in 2003. At that time, we had 254 nanometer light commonplace. Those were used in tanning beds. Those lamps were everywhere. All the art in this case talks about that. No one was even aware of a 222 nanometer light. And if Eckert would have been aware of it, he might have said something else besides that. But the only disclosure that the board grabs onto is those numbers. Those numbers are meaningless in the context of Eckert. But those are key to the claim. They are a key to the claim, and it's a key element that's missing. In the combination of Eckert and Sosnin, you get skin from Eckert, and then you look at Sosnin to replace these two lamps. It doesn't make sense to a person of skill in the art at that time to say, how could I make the teachings of Eckert safer for the use on skin? Sosnin doesn't do anything to encourage the person of skill that those tests would show you that it was more safe. If anything, those are focused on Mommalian cells. Safety is not a specific requirement of the claims. Safety comes into play because the petitioner's combination of Eckert with Sosnin, Eckert is the treatment of UV, the treatment of skin using UV. And a person of skill in the art taking that disclosure for all it teaches under 103 would know that safety, you have to do that in a safe way. Otherwise, it impacts your reasonable expectation of success. And what's key for this argument, Your Honors, to reverse it? So now we're on to the third argument against obviousness. We started with no disclosure, then we got the motivation to combine. Now we're no reasonable expectation of success. That's true, and I'll be very brief. How we know there's no reasonable expectation in 2003. In 2021. What was the board's findings on reasonable expectation? The board said, the board rejected the argument of reasonable expectation of success. But again, this is the hole in the substantial evidence of no teaching of skin. It all comes back to Sosnin teaching skin. And I'll say one brief thing. If all your argument is that Sosnin doesn't teach skin, it seems irrelevant to me because they didn't look to Sosnin for the skin, they looked to Eckert for the skin. They only looked to Sosnin for the range. Under this court's Raytheon decision, you have to look at both prior art references to enable the combination. We know that Eckert could not have taught 222 on skin, which is the entire claim. And so you have to look at both. And when you look at both, we have to look at Sosnin for the skin piece using those specific wavelengths. And it's just not there. It's not substantial evidence the panel should reverse. You are into your rebuttal time, which you can save or use. I would like to reserve it. Thank you, Judge. We will save it for you. Dr. Cranning. Good morning, Your Honors, and may it please the Court. Casey Cranning from Fisher Richardson on behalf of the FLEs. As we've just heard, a penalty in this case points to no errors of law. Instead, what they're asking this Court to do is to disregard the extensive findings of fact that the Board made below, which really amounts to more than substantial evidence. In doing so, they ask this Court to disregard the evidence that is plain on the face of the prior art, and they ask this Court to reweigh that evidence and to reweigh the credibility of both parties' experts. What is the substantial evidence to support the Board's conclusion that you would look to Sosnin for the range and that you would combine it with Eckhart? Yes, so the substantial evidence is in Eckhart at paragraph 31, which is at appendix site 1795. And that paragraph expressly says that this invention in Eckhart can be used with any nucleolite that is shown to disinfect, including narrow-spectrum wavelength lamps. Those are the same things as the eczema lamps that Sosnin uses. A person born in Risco, New York, would look to Sosnin because Sosnin has the same motivation as Eckhart in looking at whether specific wavelengths of light can be used to differentially attack bacteria versus mammalian cells. And in doing so, Sosnin uses both 222 and 282 nanometers of light. Now, I've heard my friend say that the entire claim is 222 nanometers. It's not. The claim claims 282 and 222 in the alternative. So setting apart that there may not have been an apples-to-apples comparison at 222 nanometers, there was at 282 nanometers, and what Sosnin clearly showed is that 282 was highly effective at disinfecting and killing E. coli bacteria cells while having very little impact on the mammalian CHO cells that are fibroblast cells that are often used as a mimic for wound repair in academic testing. So the board correctly concluded from this that one would be motivated to disinfect bare skin with an Esmeralda taught by Sosnin because Eckhart expressly invited modification to do so. I also heard my friends say that this is an unpredictable arc. There is no evidence below in this record to suggest that. I don't think it was even argued that it was an unpredictable arc. Indeed, Eckhart discloses that wavelength of 220 to 310 nanometers, which covers both of the wavelengths here. And in addition, it expressly uses 254 nanometer light, which was shown to be at high levels having damaging effects. But even Eckhart acknowledges that there are benefits that outweigh the risks of UV light, even at 254 nanometers. And the other point I wanted to make is that in Eckhart, I think that there is an over-reliance on the paragraph that points to that 220 to 310 range. And really the focus of what our argument is is on the paragraph 31 that has that broader invitation to try other methods of sterilization, including the narrow line wavelength lamps. And what is your response to Ms. Parsons' argument that Sosnin doesn't teach use on skin? So I would agree that technically it does not apply on skin directly, but there is evidence at the board credited below from our expert, Mr. Lawal, that show cells and fibroblasts are often used as a proxy for human skin. I would go back to Your Honor's argument that was correctly made, that we don't need Sosnin to teach disinfection of skin because we're combining it with Eckhart, which was expressly about disinfecting skin. Well, the argument also was that Eckhart doesn't teach direct application to the skin because of the bandage. So I would say that's a misreading of Eckhart. There's a plain disclosure in Eckhart that the bandage can be removed for the UV light to be applied, and so this argument that the bandage somehow had to be transmitted to the missing of UV light is not the entire teaching of Eckhart, Your Honor. Thank you. Presumably there's some discovery in the fact that these wavelengths penetrate and damage the nucleic acids. The problem for the patent is these references, there are two references, and someone else discovered that, and neither reference is in the file of the patent examination. Yes, Your Honor, that's correct. I think one of the fundamental arguments here is that really, you know, my friend on the other side is asking a lot more of the prior art than what was even disclosed in the 642 patent. The 642 patent itself says more testing is going to be needed to determine the exposure levels. It doesn't show us any testing on human skin for 222 or 282. So they're simply asking more of the prior art than even the inventor disclosed in his patent application. Anything further? Unless Your Honors have any other questions, I will yield the rest of my time. No one loses points by yielding any time. Ms. Paulson, do you have some rebuttal time? I'll be brief. Three points. We heard from Dr. Cranning that petitioners rely on paragraph 31 for the general teaching that any light that can do disinfection is what was taught by Eckert. As of 2013, the first reference I know of anywhere in the record that taught 222 on skin was 2013. And if you look at the blue brief on page 50, we refer to the IUVA article, each of which of the petitioners had a principal who was an author of that study. And on that, in the blue brief, we point to both a demonstrative from that paper that shows the penetration of skin that was known as of 2021. And we can see below that there's a quote from that study. Multiple recent studies of health effects from far UVC exposures of the eye and skin indicate that the wavelengths below about 230 nanometers are substantially safer than longer UVC wavelengths. And it cites papers ranging from 2013 to 2021. So we're talking about Eckert making a general disclosure in 2003 saying anything that's known to disinfect is what I claim in my invention. So that's the first point. Secondly, Ms. Cranning points to Dr. Lawal's testimony to say that mammalian skin is a proxy for other things. If you look at Dr. Lawal's, excuse me, Mr. Lawal's supplemental declaration where this evidence comes from, he relies purely to support that sentence on his experience. He says, in my experience, CHO cells are a proxy for mammalian skin. This court has rejected and overturned the board for motivation to combine precisely where an expert offers only a conclusory ipsa dixit statement. And that was this court's very recent decision, overturning the board in 2024, which came up after the party briefed this case. It was the Vitek. Give me one second. Did you submit a 28-H letter citing that? I did not, Your Honor. I'll give you the citation in case you want to look at it. It's Vertec Vision International versus Assembly Guidance System, 97F4882, 2024. So an unsupported expert declaration cannot support substantial evidence of the board's findings and should reverse. Finally, testing. There's an argument that's been raised in the brief that there's not more in the patent application than there is in the prior art. That argument is a red herring. This is a 103 case, not an enablement case of Mr. Niester's patent. But if you look at the specification for Mr. Niester, figures 11 and figure 14 show testing by Mr. Niester's own invention, the 222 nanometer light. Granted, that was not done on skin. But if you look at the specification itself, we have several examples, starting on columns 9 and 10, that walk through very specific methods of using that 222 nanometer light on skin. Also, in columns 2 and 3, Mr. Niester walks through precisely how DNA is denatured in a different way in each of the wavelengths at issue. 254 attacks the amino acids. And 222 was surprisingly discovered to really denature by using dimers of the DNA proteins. So Mr. Niester has an in-depth understanding of his invention. He was the first one to put 222 or 282 nanometers on skin in a claim. And his patent is presumed valid. And it should be upheld by this panel. Thank you, counsel. Your time has expired. We appreciate both arguments and the cases submitted.